UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| RONNIE LAUDERDALE, ) ) Petitioner, ) ) V. ) ) WARDEN J. C. HOLLAND, ) ) Respondent. ) ) | Civil Action No. 6: 14-28-DCR <br><br> **MEMORANDUM OPINION AND ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Petitioner Ronnie Lauderdale is an inmate confined at the United States Penitentiary-McCreary ("USP-McCreary") in Pine Knot, Kentucky. Proceeding without an attorney, Lauderdale has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. He asks the Court to expunge a disciplinary conviction from his inmate record for a number of reasons. Because Lauderdale's claims are deficient and contradicted by the record, his petition will be denied.

**I.**

On December 9, 2012, Officer Gadberry, Senior Officer Specialist at USP-McCreary, searched Lauderdale's cell and discovered two handmade weapons.[1] Officer Gadberry filed

---

[1] The incident report states in relevant part:

> Both weapons were made by melting a razor into a white plastic handle creating a slashing type weapon; the handle was reinforced by a small piece of wood, on the backside. Both weapons were approx. three inches in length. Cell 129 in unit 3B is occupied by inmate Lauderdale, Ronnie #18646-009. One of the weapons

-1-

an incident report charging Lauderdale with "Possession of a Weapon" in violation of BOP Prohibited Acts Code ("PAC") § 104. [Record No. 1-1, p. 6] The Unit Disciplinary Committee referred the charges to a disciplinary hearing officer for resolution. On December 19, 2012, a disciplinary hearing was held regarding the incident. Officer Gary Mehler presided over the hearing and prepared a report summarizing the proceeding. According to the report, Lauderdale admitted that the weapons were his: "Yeah, they're mine, but I used them to make cards." *See* DHO Report, [*Id.*, p. 7, § III(B)]

In addition to Lauderdale's statement, the disciplinary hearing officer relied upon the incident report, a photograph of the weapons, and Lauderdale's prior statement, in which he claimed that one of the weapons was "a tool I use to cut Christmas Cards with and my food." [*Id.*, p. 8, §§ III(D)(1); V, ¶ 4] Based on this evidence, the disciplinary hearing officer found Lauderdale guilty of possessing weapons in violation of PAC § 104. [*Id.*, § V] Lauderdale was sanctioned to thirty days of disciplinary segregation and a loss of telephone privileges for six months. [*Id.*, p. 9, § VI]

Lauderdale appealed the findings, arguing: (i) that he was using the materials found in his cell as tools for making cards and for cutting his food; (ii) that if the items had in fact been "weapons," he would not have left them out in the open in his cell; (iii) that he had been a model prisoner who respected and abided by prison regulations; and (iv) that Officer Gadberry was racially prejudiced and a bigot. [*Id.*, pp. 4-5] On April 23, 2013, his appeal

---

was found on top of the cork boards, the other weapon was inside a box next to the toilet.

[Record No. 1-1, p. 6, ¶ 11]

was denied by the BOP. The BOP concluded that Lauderdale's conviction was based on sufficient evidence. Further, there was no evidence of racial discrimination. [*Id.*, p. 11]

Lauderdale filed two additional appeals with the BOP Central Office. After his second appeal was denied, he filed the current § 2241 petition. In his petition, Lauderdale contends that the disciplinary hearing office violated his due process rights by accepting the allegations of the incident report over his claims that the weapons were merely tools he used to make cards and to cut his food. Lauderdale further alleges that Officer Gadberry wrote the incident report "for discriminatory reasons" and that the report is evidence of Gadberry's "discriminatory attitude and bigotry towards Lauderdale and other inmates of color." [Record No. 1-1, p. 3] Lauderdale seeks an Order directing the BOP either to expunge the conviction from his record or reduce the conviction to an offense of lower severity. [Record No. 1, p. 8]

**II.**

In conducting an initial review of habeas petitions under 28 U.S.C. § 2243, the Court must deny the relief sought "if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (applicable to § 2241 petitions pursuant to Rule 1(b)). Because Lauderdale is not represented by an attorney, the Court evaluates his petition under a more lenient standard. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003). At this stage of the proceedings, the Court accepts Lauderdale's factual allegations as true and liberally construes his legal claims in his favor.

**III.**

Lauderdale claims that his due process rights were violated during the disciplinary proceedings. As noted above, Lauderdale was sanctioned to thirty days in disciplinary segregation and lost six months of telephone privileges. These sanctions do not implicate a liberty interest such that due process concerns are triggered.

For a liberty interest to be implicated in a prison setting, the interest must be limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). The law is well-established that prisoners have no protected liberty interest in remaining free of disciplinary confinement. *Id.* at 484; *Lee v. Young*, 43 F. App'x 788 (6th Cir. 2002); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). The Supreme Court has expressly found that a thirty-day placement in disciplinary segregation does not run afoul of the constitution, particularly where, as here, a prisoner is serving a life sentence. *Sandin*, 515 U.S. at 486; *see also Hall v. Fuqua*, No. 10-13350, 2010 WL 3768345 at *2 (E.D. Mich. Sept. 21, 2010) (finding that 30 days of detention in segregation and loss of privileges were not "atypical and significant hardship[s]" on the prisoner). Finally, the temporary suspension of a prisoner's telephone privileges does not implicate a protected liberty interest. *See Halcrombe v. Sniezek*, No. 4:07-CV-779, 2007 WL 1875678, at *4 (N.D. Ohio June 27, 2007); *Johnson v. Vroman*, No. 1:06-CV-145, 2006 WL 1050497, at *2 (W.D. Mich. April 19, 2006).

Because neither of the sanctions imposed on Lauderdale caused him to serve a longer federal sentence or suffer an atypical hardship in relation to ordinary prison life, he has not

alleged grounds entitling him to relief from his disciplinary conviction. *See, e.g., Boriboune v. Litscher*, 91 F. App'x 498, 500 (7th Cir. 2003) (finding that the prisoner's short-term loss of telephone privileges and disciplinary segregation implicated no liberty interest and triggered no due process protection); *Jessiah v. Holland*, No. 12-CV-144-GFVT, 2013 WL 460624 at *1 (E.D. Ky. Feb. 6, 2013) (denying prisoner's § 2241 petition where his disciplinary sanctions consisted only of the loss of his prison job and temporary telephone privileges, not the loss of good time credit).

Moreover, a finding of guilt in a disciplinary proceeding need only be "'supported by some evidence in the record.'" *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (quoting *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985)). The "some evidence" standard is a lenient one, requiring only "a modicum of evidence." The standard is met if the record contains any evidence that could support the [disciplinary hearing officer's] decision. *Hill*, 472 U.S. at 455–56. The "some evidence" standard requires only that the "disciplinary decision is not arbitrary and does have evidentiary support." *Id*. at 457.

Here, the disciplinary hearing officer relied on more than "some evidence" to find that Lauderdale was guilty of the disciplinary violation. He relied upon the incident report containing Lauderdale's statements, the photograph of the weapons, and Lauderdale's admission that he possessed the materials found in his cell. The law is clear that a disciplinary hearing officer need not accept what the inmate perceives to be the most convincing or persuasive set of facts. *See Sarmiento v. Hemingway*, 93 F. App'x 65, 68 (6th Cir. 2004) (affirming the disciplinary hearing officer's determination on the weight of the

evidence where the facts were in dispute); *see Johnson v. Patton*, No. 06-CV-HRW, 2006 WL 950187, at *5 (E.D. Ky. April 12, 2006).

**IV.**

Lauderdale, who is black, also alleges that Officer Gadberry only filed the incident report against him because of his race. To state a claim for selective enforcement of prison disciplinary rules, Lauderdale must satisfy a three-part test. *See Gardenshire v. Schubert*, 205 F.3d 303, 318–19 (6th Cir. 2000). First, he must allege he belongs to an identifiable group, such as race or religion, and that he was singled out for prosecution when persons not belonging to that group were not prosecuted in similar situations. *Id.* Second, the officer must initiate the prosecution with a discriminatory purpose. *Id*. Third, the prosecution must have a discriminatory effect on the group to which the petitioner belongs. *Id*. Discriminatory intent may be established by showing an unequal application of a prison policy or system. However, conclusory allegations of racism are insufficient. *Minority Police Officers Ass'n v. South Bend*, 801 F.2d 964, 967 (7th Cir. 1986); *see also Williams v. Halbert*, No. 08-CV-006–KSF, 2008 WL 2397709, at *10 (E.D. Ky. June 11, 2008) ("Claims of racial discrimination must be pled with particularity.") (citing *Blackburn v. Fisk Univ.*, 443 F.2d 121 (6th Cir.1971); *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir.1990)).

In this case, Lauderdale alleges in broad, general terms that Officer Gadberry demonstrated a "discriminatory attitude" and "discriminatory intent" against him and other black inmates. But Lauderdale does not allege that he was treated differently than others suspected of making weapons. *See Boone v. Spurgess*, 385 F.3d 923, 932 (6th Cir. 2004). Further, there are no allegations that Officer Gadberry selectively enforced prison

disciplinary rules against him or other black inmates while refusing to take the same action against white inmates. Lauderdale ignores the fact that he admitted that he possessed the weapons found in his cell. Based on the evidence submitted, the disciplinary hearing officer properly concluded that the discovered materials constituted weapons, not tools for making Christmas cards. Therefore, a non-discriminatory basis exists for the issuance of the incident report and for Lauderdale's subsequent disciplinary conviction. Lauderdale has failed to sufficiently plead a claim of racial discrimination. *See*, *e.g.*, *Peirce v. Dietz*, No. 4:13-CV-1956, 2013 WL 627633, at *4 (N.D. Ohio Dec. 4, 2013) (rejecting prisoner's racial discrimination claims against prison officials for lack of specificity).

**V.**

For the reasons discussed above, it is **ORDERED** as follows:

1. Ronnie Lauderdale's 28 U.S.C. § 2241 petition for a writ of habeas corpus [Record No. 1] is **DENIED**.

2. This matter is **DISMISSED** and **STRICKEN** from the Court's docket.

3. Judgment shall be entered contemporaneously in favor of the Respondent.

This July 8, 2014.

